AO 243   (Rev. 2/95)

05-1075(SEC)

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District Puerto Rico | |
|---|---|---|
| Name of Movant<br>Andres Garcia-Torres | Prisoner No.<br>14959-069 | Case No.<br>97-00082-SEC |
| Place of Confinement | | |

FEDERAL CORRECTIONAL INSTITUTION EDGEFIELD, P.O. BOX 725, Edgefield, S.C. 29824

| UNITED STATES OF AMERICA | V. | Andres Garcia Torres |
|---|---|---|
| | | (name under which convicted) |

## MOTION

1.  Name and location of court which entered the judgment of conviction under attack __U.S. District Court__
__For The District of Puerto Rico__, San Juan, Puerto Rico

2.  Date of judgment of conviction _____

3.  Length of sentence __480 months__

4.  Nature of offense involved (all counts) __Conspiracy to distribute cocaine, heroin, marijuana;__
__Money Laundering; 3 years supervised release__

5.  What was your plea? (Check one)
    (a) Not guilty    ☒
    (b) Guilty    ☐
    (c) Nolo contendere    ☐

    If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6.  If you pleaded not guilty, what kind of trial did you have? (Check one)
    (a) Jury    ☒
    (b) Judge only    ☐

7.  Did you testify at the trial?
    Yes    ☐    No    ☒

8.  Did you appeal from the judgment of conviction?
    Yes    ☒    No    ☐

AO 243   (Rev. 2/95)

9.   If you did appeal, answer the following:

    (a) Name of court   First Circuit Court of Appeals

    (b) Result   Conviction and sentence affirmed

    (c) Date of result   August 23, 2003

10.   Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?
    Yes ☐    No ☐

11.   If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court   First Circuit Court of Appeals

        (2) Nature of proceeding   Rehearing En Banc

        (3) Grounds raised

        (4) Did you receive an evidentiary hearing on your petition, application or motion?
        Yes ☐    No ☒

        (5) Result   Petition For Rehearing Denied

        (6) Date of result   September 25, 2003

    (b) As to any second petition, application or motion give the same information:

        (1) Name of court   United States Supreme Court

        (2) Name of proceeding   Petition For Writ of Certiorari

        (3) Grounds raised   Whether the District Court erred in instructing the jury that they could convict appellates Manuel and Andres Garcia Torres on either the promotion or concealment prong of the money laundering statute instead of both as charged in count two of the indictment

AO 243    (Rev. 2/95)

(4)  Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐    No ☒

(5)  Result ___Certoirari denied___

(6)  Date of result ___January 2004___

(c)  Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1)  First petition, etc.    Yes ☐    No ☐
(2)  Second petition, etc.    Yes ☐    No ☐

(d)  If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12.  State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION:  If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.
Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of these grounds.
(a)  Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
(b)  Conviction obtained by use of coerced confession.

AO 243    (Rev. 2/95)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: Whether the trial court erred in sentencing the Petitioner on Count One of the superseding indictment which charged Petitioner with knowingly conspiring to possess cocaine, heroin and marijuana with the intent to distribute same

Supporting FACTS (state *briefly* without citing cases or law):

SEE MEMORANDUM

B. Ground two: Whether the Supreme Court's definition of statutory maximum as defined in Blakely v. Washington clearly shows that Petitioner's sentence was imposed in violation of the law

Supporting FACTS (state *briefly* without citing cases or law):

SEE MEMORANDUM

C. Ground three: Whether the trial court erred by failing to make specific findings as to the amount of drugs attributable to Petitioner without making specific individualized findings as drug amount to Petitioner

Supporting FACTS (state *briefly* without citing cases or law):

SEE MEMORANDUM

AO 243    (Rev. 2/95)

D.  Ground four: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

14.  Do you have any petition or appeal now pending in any court as to the judgment under attack?
     Yes  ☐      No  ☐

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

     (a)  At preliminary hearing  _____

     _____

     (b)  At arraignment and plea  _____

     _____

     (c)  At trial  _____

     _____

     (d)  At sentencing  _____

     _____

AO 243    (Rev. 2/95)

(e)  On appeal _____

_____

(f)  In any post-conviction proceeding _____

_____

(g)  On appeal from any adverse ruling in a post-conviction proceeding _____

16.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes  ☐    No  ☐

17.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes  ☐    No  ☐

(a)  If so, give name and location of court which imposed sentence to be served in the future: _____

_____

_____

(b)  Give date and length of the above sentence: _____

_____

(c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes  ☐    No  ☐

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_12 - 27 - 04_____
Date

_Pedro Garcia Torres_____
Signature of Movant

(7)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

Respondent

VS                                          CR. 97-0082-(SEC)

ANDRES GARCIA TORRES

_____Petitioner_____/

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S HABEAS CORPUS MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 USCA § 2255

COMES NOW, ANDRES GARCIA TORRES, The Petitioner (hereinafter Petitioner or Garcia Torres), pro-se and respectfully moves this Honorable Court pursuant to 28 USCA § 2255 to vacate, set aside, or correct his sentence and/or conviction hereto imposed. As a matter of introduction, the Petitioner respectfully submits that the events which transpired in the instant cause constitutes a denial of Petitioner's Due Process and Sixth Amendment rights as guaranteed by the United States Constitution.

### JURISDICTION

The District Court had original jurisdiction over this criminal case pursuant to 18 USC 3231, which vest in the United States District

the motion except as to a portion of the money launder count. (T.T. 12/8/98, pg. 119-120). The denials were reaffirmed at the close of the case (T.T. 12/14/98, pg. 61). The jury returned a verdict of guilty on both counts.

Petitioner was sentenced on December 19, 2001, to a term of 20 years on count one and twenty years on count two, both terms to be served consecutively, to be followed by three years for count one and three years for count two of supervised release to be served concur- rently. A timely notice of appeal was filed on December 19, 2001.

The opinion and judgement by the Court of Appeals for the First Circuit is published U.S. v. GARCIA-TORRES, 341 F.3d. 61 (1st Cir. 2003). On September 11, 2003, Petitioner filed a petition for rehear- ing en banc. On September 25, 2003, the Court of Appeals for the First Circuit denied the petition in an unpublished opinion.

On December 19, 2003, Petitioner filed a Petition For A Writ Of Certiorari to the United States Supreme Court.

On January  2004, Petitioner's Writ of Certiorari was denied. This § 2255 now ensues.

## STATEMENT OF FACTS

The charges and conviction in this case are the result of an alleg- ed investigation of the drug trafficking activities of Ms. Angela Ayala- Martinez and Jurge Serrano-Alicea, within the Southern part of Puerto Rico. According to authorities, the organization was responsible for distribution of multi-kilograms of quantities of controlled substances, (i.e. cocaine, heroin, and marijuana) and money laundering within the

Ponce area of Puerto Rico. As a result of said investigation, Ayala-Martinez was singled out as being the leader of the criminal organization in that area.

During the trial, the Government presented its case-in-chief against Mr. Andres Garcia-Torres exclusively through the testimony of six-alleged co-conspirators, who alleged that they observed or been involved with drug dealings and murders involving Mr. Garcia-Torres.

Following the trial, on December 18, 1999, the Petitioner was found guilty as to Count one and two of the superseding indictment. The District Court ordered the presentence report. The U.S. Probation Officer Maria Luisa Monge prepared the Petitioner's PSR and timely objections were submitted.

The presentence report for Petitioner recommended a base offense level 43 pursuant to USSG § 2D1.1(d)(1), because it was alleged that at least one person was murdered in connection with the drug conspiracy. The PSR also recommended a two point enhancement for a defendant's possession of a firearm. The PSR's while not making any specific determination concerning the amounts and type of drugs involved in the conspiracy, noted that the conspiracy trafficked in "multi-kilograms" quantities of cocaine in connection with group one. Group two include a base offense level of 23 pursuant to 2S1.1 for laundered funds. A three level increase was recommended because of what the PSR believed what the Petitioner knew or believed about the laundered funds. No recommendations were requested as to the value of funds laundered.

The PSR also noted that Andres-Garcia-Torres was involved in murders alleged in connection with the conspiracy and recommended a § 2A1.1 cross reference.

Court jurisdiction over offenses against the laws of the United States.

The Court that has sentenced Garcia-Torres may review the sentence and/or conviction it imposed and correct the denial of a constitutional right violated by the imposition of the conviction and sentence itself. This statutory right under § 2255 is not merely to a federal forum but to provide a full and fair consideration of the constitutional claims. Kaufman v. U.S., 394 US 217(1960).

### EXCUSABLE ERROR

Petitioner is a layman at law, therefore as a pro-se litigant, he invokes the excusable error analysis of Haines v. Kerner, 404 US 519 (1972), where this Court is required to hold Petitioner's pleading to a less stringent standard than pleadings drafted by a lawyer. Lema v. U.S., 987 F.2d. 48, 54 n.5(1st Cir. 1993).

### STATEMENT OF THE CASE

On December 17, 1997, a grand jury sitting in the District of Puerto Rico returned a superseding indictment charging, inter alia, that from in or about the summer of 1994 to no earlier than in or about June 1997, 79 individuals, including the Petitioner Andres Garcia-Torres conspired to possess with the intent to distribute cocaine, heroin, and marijuana (Count one) and that they and 28 others conspired to launder money (Count two).

Trial began on October 6, 1998 before the Honorable Salvador Casellas. Motions for judgement of acquittal were made at the close of the Government's case. (T.T. 12/8/98, pg. 18, 61-84) and renewed at the close of the case(T.T. 12/14/98, pg. 60-61). The Court denied

ii

After various filings by both parties on various issues and re-
quests for continues, the sentencing hearing was finally set for
November 30, 2000. However on June 26, 2000, the Supreme Court decided
the monumental case of Apprendi v. New Jersey supra, which stood for
the proposition that "other than the fact of a prior conviction, any
fact that increases a penalty for a crime beyond the prescribed
statutory maximum must be submitted to a jury and proven beyond a
reasonable doubt". The Court had both parties memorandums of law re-
garding the effects of the Supreme Court decision in Apprendi on the
sentencing options available to the Court regarding the Petitioner
and his co-conspirators.

Finally the sentencing was set for December 19, 2001 before the
Honorable Judge Salvador Casellas. During the sentencing hearing after
hearing both sides of the applicability of Apprendi, the Court ruled on
the side of caution stating that it would be error to use the murders to
enhance Petitioner's sentence without a specific finding from the
jury beyond a reasonable doubt. Thus the Court eliminated any cross-
reference under 2A1.1.

Subsequently, the Court on the basis or the revised PSR, the PSR
concluded that Petitioner was responsible for 150 kilograms or more of
cocaine and recommended a base offense level of 38 for a conspiracy-
wide calculation, and of course relevant conduct; a two points was
assessed for a 2D1.1(b)(1) enhancement. The final recommendation for
group one was 40. With a guideline range of 360-Life, group two again
involved the money laundering conviction which a base offense level
of 23 was recommended 2S1.1; and three points were assessed as per

v

2S1.1(b)(1). Again no recommendation was asked for, for laundered funds.

After the sentencing Court had determined the offense level (including all upward and downward adjustment) the Court fixed the total punishment within the applicable guideline sentencing range, as life. The Court held that if one of the underlying counts of conviction has a statutory maximum sentence greater than or equal to the total punishment the Court will then impose the total punishment on that count, with sentences on any other counts. USSG § 5G1.2(d).

At Anders Garcia-Torres sentencing, the Court arrived at a base offense level of 40 with a sentencing guideline range of 360-Life. Cross-referencing to criminal history category of III. The Court determined that within that range, a total punishment of life was appropriate "due to all the facts of the case, the Petitioner's participation, his disregard for life, for murders and all of the other incidents that this Court saw throughout the three month trial". Having thus fixed the total punishment at life, the District Court felt obligated under 5G1.2(d), to impose a 20-year sentence (the statutory maximum) on each count, the sentences to run concurrently. also 3 years supervised release was assessed on both counts, to be served concurrently.

ISSUES PRESENTED FOR REVIEW

ISSUE ONE

WHETHER THE TRIAL COURT ERRED IN SENTENCING THE
PETITIONER ON COUNT ONE OF THE SUPERSEDING INDICTMENT
WHICH CHARGED PETITIONER WITH KNOWINGLY CONSPIRING TO
POSSESS COCAINE, HEROIN AND MARIJUANA WITH THE INTENT
TO DISTRIBUTE SAME

ISSUE TWO

WHETHER THE SUPREME COURT'S DEFINITION OF STATUTORY
MAXIMUM AS DEFINED IN BLAKELY v. WASHINGTON CLEARLY
SHOWS THAT PETITIONER'S SENTENCE WAS IMPOSED IN
VIOLATION OF THE LAW

ISSUE THREE

WHETHER THE TRIAL COURT ERRED BY FAILING TO MAKE
SPECIFIC FINDINGS AS TO THE AMOUNT OF DRUGS
ATTRIBUTABLE TO PETITIONER WITHOUT MAKING SPECIFIC
INDIVIDUALIZED FINDINGS AS TO DRUG AMOUNT TO
PETITIONER

ISSUE ONE

**WHETHER THE TRIAL COURT ERRED IN SENTENCING THE PETITIONER ON COUNT ONE OF THE SUPERSEDING INDICTMENT WHICH CHARGED PETITIONER WITH KNOWINGLY CONSPIRING TO POSSESS COCAINE, HEROIN, AND MARIJUANA WITH THE INTENT TO DISTRIBUTE THE SAME**

Count One of the superseding indictment charged Petitioner Andres Garcia-Torres and 78 others in a conspiracy to distribute cocaine, heroin and marijuana in violation of 21 USC § § 841(a)(1) and 846 respectively. The superseding indictment reads in relevant part:

> the defendants did herein, knowingly, willfully, unlawfully,
> and intentionally combine, conspire, confederate and agree
> with others and with divers other persons to the grand jury
> known and unknown to commit offenses against the United States,
> to wit to knowingly and intentionally possess with the intent
> to distribute and distribution of multi-kilogram amounts of:
> (a) cocaine, a schedule II narcotic drug controlled substance;
> (b) heroin, a schedule I narcotic drug controlled substance; and
> (c) marijuana, a schedule I controlled substance, that is conspiracy
> to violate Title 21 USC § 841(a)(1). All in violation of Title 21
> USC § 846.

The District Court instructed the jury that they could find the defendants guilty on Count one **if the jury determined** that the defendants had conspired to possess with the intent to distribute a controlled substance. i.e. cocaine, heroin, marijuana (T.T. 12/16/98, pg. 139-143). In the second part of those instructions regarding Count one, the Court further instructed the jury that cocaine, heroin and marijuana were controlled substances. Id. 143. The Court submitted a general instruction to the jury, as a by-product of the Courts instruction, the jury returned a general verdict, finding the Petitioner and other defendants charged in this count one guilty of conspiracy.

1

In this cause, the Petitioner was to be sentenced on December 19, 2001. Although found guilty by a pre-Apprendi jury verdict, the principles of Apprendi v. New Jersey applied to this sentencing. The Court conceded the error in the jury instructions regarding the multi-object drug conspiracy and the general verdict (S.T. 12/19/01, pg. 28-29), but held that, in the absence of a drug amount and kind in the indictment, which was also absent from the deliberating jurors consideration, the Court still retained the discretion to sentence the Petitioner to the catch-all provisions of 21 USC § 841(b)(1)(C) and impose the stautory maximum of 20 years. Id. at 29, or 240 months. The problem here is that, the three different drug types carry vastly different penalties. Even though the probation department converted the amount of cocaine, heroin, and marijuana attributed to the Petitioner into marijuana for the purposes of reestablishing the appropriate base offense level, no attempt was made by the Court to determine whether the jury found the Petitioner guilty of cocaine, heroin, marijuana or all three, as the object of the conspiracy.

Circuit Courts who have visited this issue of a multi-object conspiracy with a general verdict of guilty, like here, have firmly spoken that the District must vacate the sentence and remand for re-sentencing, because in the absence of a special verdict without the jury identifying the object of the conspiracy, it is impossible for the Court to determine with any certainty the quantity of quality of the drug which should have been the object of the conspiracy. See U.S. v. Melvin, 27 F.3d. 710, 715(1st Cir. 1994); U.S. v. Allen, 302 F.3d. 1260(11th Cir. 2002); U.S. v. Rhymes, 196 F.3d. 207(4th Cir. 1999); U.S. v. Dale, 178 F.3d. 429(6th Cir. 1999). This is particularly important because the penalties vary between the three different drug types. Although not a multi-object drug conspiracy the First Circuit Court of Appeals visited this issue in U.S. v. Melvin, 27 F.3d. 710(1st Cir. 1994). In Melvin, the defendants were charged with, and convicted of, possession of a

2

firearm in connection of a crime of violence. However, the jury verdict failed to designate which of several firearms alleged to be in their possession were involved. The potential penalties in that case ranged from possession of machine guns carrying a mandatory minimum 30 year sentence, to possession of handguns, carrying a mandatory minimum 5 year sentence. The Appellate Court resolved the sentencing issue by affirming the defendant's sentence as the lowest it could be, that of a conviction for possession of a handgun. Id. 27 F.3d. at 715.

U.S. v. Allen, 302 F.3d. 1260(11th Cir. 2002) is also a multi-drug conspiracy involving cocaine, and marijuana. The defendants in Allen were charging possession with intent to distribute cocaine, and marijuana in one count in a multi-count indictment. The defendant went to trial and was convicted on count **one** of the superseding indictment consisting of the two different drug types. The verdict returned by the jury was a general one and did not identify which drug was the object of the conspiracy. The defendants in Allen was sentenced to the most severe drug, cocaine, however, the Eleventh Circuit vacated the defendant's sentence on count one, and remanded for re-sentence, because of the jury's failure to identify the object of the multi-drug conspiracy, and their sentence exceeded the statutory maximum for the lowest drug punishable, the marijuana. Id. 302 F.3d. at 1275-1276.

The Fourth Circuit vacated a sentence and remanded for resentencing in the case of U.S. v. Rhynes, 196 F.3d. 207(4th Cir. 1999). The Rhynes case bears a factual resemblance to the case at bar. Like here, the defendants in Rhynes were charged in a single count with a multi-object drug conspiracy charging cocaine, crack, heroin, and marijuana. The District Court in Rhynes submitted a general verdict as to the conspiracy count, here, the District Court explained that for them (the jury) to find the Petitioner guilty of conspiracy, the Government was required to prove beyond a reasonable doubt that he possess with intent to distribute controlled

3

substances; and subsequently just instructed the jury what were the controlled substances in this case. (T.T. 12/18/98, pg. 139-143), i.e., cocaine, heroin, and marijuana. Like the defendants in Rhynes, the government never requested a special verdict as to the object of the conspiracy. The Rhynes court concluded, in the absence of a special verdict, that it could not sentence beyond the statutory maximum sentence for the least serious of the three alleged controlled substances, i.e., marijuana. Rhynes, 196 F.3d. at 329. Because the U.S. v. Rhynes brings a factual similiarity to the facts of this case, this Court should find Rhynes persuasive authority and invoke and award Petitioner the same relief.

Accordingly, as they must be appied here Melvin, Allen, Rhynes and Dale prohibited the District Court from imposing a sentence in excess of the statutory maximum for the least punished object on which the conspiracy conviction could have been based, marijuana.

ISSUE TWO

> WHETHER THE SUPREME COURT'S DEFINITION OF STATUTORY
> MAXIMUM AS DEFINED IN BLAKELY v. WASHINGTON CLEARLY
> SHOW THAT PETITIONER'S SENTENCE WAS IMPOSED IN
> VIOLATION OF THE LAW

Petitioner contends that the sentencing Court clearly erred when imposing the statutory maximum sentence of 20 years in both counts one and two of Petitioner's superseding indictment. In the recently decided Supreme Court decision of Blakely v. Washington, infra, the Supreme Court defined the term "statutory maximum" as that term was used in Apprendi v. New Jersey, 530 US 466(2000), explaining that "Our precedent makes clear, that the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. See Ring v. Arizona, 1225 S.Ct. 2428 ("the maximum he would received if punished according to the facts reflected

4

in the jury verdict alone".); <u>Harris v. U.S.</u>, 536 US 545, 563(2002). In other words,
the relevant "statutory maximum" is not the maximum sentence a judge may impose
after finding additional facts, but the maximum he may impose **without** any additional
findings. When a judge inflict punishment that the jury's verdict alone does not
allow, the jury has not found all the facts "which the law makes essential to the
punishment", and the judge exceeds his proper authority.

### A). STATUTORY MAXIMUM FOR PETITIONER'S DRUG OFFENSE IN COUNT ONE

Prior to the sentencing in this cause, there was an intervening change in law,
that required the sentencing Court to follow the holding of <u>Apprendi v. New Jersey</u>,
530 US 466(2000), which stood for the proposition that "any fact that increases a
defendant's sentence beyond the statutory maximum must be charged in the indictment,
submitted to the jury and found by the jury beyond a reasonable doubt". (S.T.
12/18/01, pg. 2-3).

The Petitioner raised at sentencing that the alleged murders were not found by
the jury beyond a reasonable doubt, and that the drug quantities attributed to him
were not properly found by the jury. (Id. at 3). After reviewing arguments from
both the Government and the defendant, the Court held that <u>Apprendi</u> forbidded the
use of alleged murders into the sentencing scheme, (2A1.1) without the benefit of a
special finding from the jury regarding the murders (Id. at 3). The Court concluded
that it would be error to use the murders to enhance the Petitioner's sentence. Id.

Regarding the multi-drug conspiracy count, where counsel's argument was **drug
quantity** only, the Court stated <u>Apprendi</u> held that in order to sentence a defendant
under § § 841(b)(1)(a) or 841(b)(1)(b) instead of § 841(b)(1)(c)'s catch-all
statutory maximum of 20 years, the drug quantity had to be treated as an element of
the offense charged in the indictment, submitted to the jury and proven beyond a

reasonable doubt.[1][2]Because drug amount was not charged in Petitioner's indict-
ment, submitted to the jury nor proven beyond a reasonable doubt, the Court held
that it could not impose a sentence pursuant to § 841(b)(1)(a) or § 841(b)(1)(b).
However based on the preponderance of the evidence and relevant conduct the Court
stated it still retained the discretion to sentence the petitioner to the
"statutory maximum" of the catch-all provision of § 841(b)(1)(c). Petitioner was
sentenced to twenty years on count one.

Petitioner states that the Court committed clear error when it imposed the
statutory maximum of twenty years pursuant to § 841(b)(1)(c), where the statutory
maximum as defined by Blakely v. Washington, 124 S.Ct. 25(2004) clearly identified
that statutory maximum as the maximum sentence the Court could impose without any
judicial fact findings.

While the Blakely court only addressed the Washington state sentencing scheme,
the manner in which the majority defined the "statutory maximum" should compel this
Court to conclude that its reasoning applies with equal force to the sentencing
guidelines.

In the case subjudice, Petitioner's indictment charged, in count one a multi-
object drug conspiracy, i.e., cocaine, heroin and marijuana. When the trial was
concluded, the jury found Petitioner guilty of the multi-object drug conspiracy
in what the law deems a general verdict. Melvin. The PSR without proof beyond a
reasonable doubt, stated that the object of the conspiracy was cocaine and recom-
mended a base offense level of 38, pursuant to § USSG 2D1.1(c) alleging that there

[1]Although the identity of the three drugs were charged in Petitioner's indictment,
and submitted to the jury, the jury never identified which drug was the object of
the conspiracy beyond a reasonable doubt.

[2]The PSR selected cocaine out of the 3 drugs as the object of the conspiracy.

was 150 kilograms or nore of cocaine involved in the conspiracy. Two more additional points were recommended as dangerous weapons were possessed by co-conspirators to carry out the commission of the offense. See § 2D1.1 (c)(1). The final base offense level recommendation was 40. The sentencing Court adopted the PSR's findings as its own, but due to the Supreme Court ruling of Apprendi, the Court found that the drug amount was not contained in the indictment, nor found by the jury and resorted to the catch-all provision to impose a 20 year sentence pursuant to 21 USC § 841(B)(1)(C) only because it could not impose a life sentence based on the Court's belief that the Petitioner was involved in murders in connection with the offense of conviction. Here, with the District judge's judicial findings, Petitioner faced a base offense level of 40 with a range of 360-Life. However, solely on the basis of the jury's verdict, which did not identify the drug object of the conspiracy, by law, the Court was required to impose a sentence consistent with the lowest penalty, i.e., marijuana. Moreover, because the only language in the indictment concerning drug amount was multi-kilograms the Court can certainly construe this to mean more than two kilograms, in the absence of specific fact findings by the jury. Thus without any additional findings by the Court, Petitioner's base offense level would have been 12, for 2.5 kilograms to 5 kilograms of marijuana based the preponderance of the evidence, with a sentencing range of 15-21 months. Although the sentencing Court held that the "statutory maximum" for Apprendi purposes is the statute of conviction (here § 841(b)(1)(c), Blakely's definition of "statutory maximum" as "the maximum sentence a judge may impose **solely on the basis of the facts reflected in Petitioner's jury verdict**" 124 S.Ct. at 2537 suggest this conclusion was in error, because the Court imposed a 20 year sentence which far exceeded the maximum sentence that the District judge could have imposed simply on the basis of the jury verdict. This directly parallels the

7

sentencing process held unconstitutional in <u>Blakely</u>.

Therefore, Petitioner states that the District judge's imposition of this sentence after determining the material sentencing facts by a preponderance of the evidence, rather than relying on a jury's determination of the facts beyond a reasonable doubt, violated Petitioner's Sixth Amendment rights as explained in <u>Blakely</u>.

## B). THE COURT EXCEEDED THE STATUTORY MAXIMUM FOR THE MONEY LAUNDERING

The District Court's application of the Sentencing Guidelines is a two-fold process. <u>U.S. v. Cali</u>, 87 F.3d. 571, 573(1st Cir. 1996). First, the applicability and interpretation of the sentencing guidelines are reviewed de novo. Id. at 575. Second, the factual determination of the sentencing Court are given due deference to its application of the guidelines to the facts. Id.

Although the Petitioner's counsel somewhat raised the issue of sentencing Petitioner to the "statutory maximum" of the money laundering provision 18 USC § 1956, without making any particularized finding of facts before rejecting the PSR's determination that no increase to the base offense was warranted since the value of the funds laundered did not exceed $100,000, Petitioner is not prohibited from addressing the District Court's definition of statutory maximum as that term was defined in <u>Blakely v. Washington</u>, 124 S.Ct. 2531(2004), to the facts of this claim.

Petitioner's contention is that the Supreme Court's decision of <u>Apprendi v. New Jersey</u>, 530 US 466(2000) which stands for the proposition that "any fact other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt". Subsequently, on July 24, 2004, the Supreme Court decided the

seminal case of <u>Blakely v. Washington</u> after Petitioner's case was affirmed on direct appeal, and interpreted <u>Apprendi</u>'s definition of "statutory maximum", which establishes that his 20 year sentence on the money laundering count exceeded the "statutory maximum" permitted by the guidelines. If this contention is well taken, then Petitioner's increased punishment are based on judicial fact findings that the Court did not have the authority to impose. There can be no room for doubt that such a circumstance "inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify relief under § 2255". <u>Davis v. U.S.</u>, 417 US 333, 346-47(1974).

### THE FINDINGS BASED SOLELY ON THE JURY VERDICT

Count 2 of Petitioner's superseding indictment which charged the Petitioner with conducting financial transaction with the intent to promote a specified un-lawful activity and knowing that the transactions are designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of the specified unlawful activity all in violation of 18 USC § 1956(a)(1). No dollar amount was specified in the indictment. The jury found the Petitioner guilty of this count two.

The PSR recommended a base offense level of 23. 18 USC § 1956(a)(1)(A) as govern-ed by USSG § 2S1.1(a)(1) involving the laundering of monetary instruments. The PSR also applied the specified offense characteristic, because the probation department believed that the Petitioner knew or believed that the funds were proceeds of an unlawful activity involving drug trafficking activities. A three(3) level increase was requested. § 2D1.1(b)(1). The final recommended base offense level was 26 with a sentencing range of 78-97 months. Nothwithstanding the PSR's recommendations the District Court imposed the statutory maximum of 20 years under 18 USC § 1956(a)(1).

The nub of Petitioner's claim is that, with the District judge's factual

9

findings, Petitioner faced an offense level of 26 with a sentencing range of 78-97 months, but the Court departed to the statutory maximum of 20 years to comport with the total punishment of 20 years in count one. However, solely on the basis of the Petitioner's guilty verdict without any additional findings, Blakely 124 S.Ct. 2537, his base offense level would have been 23 with a sentencing range of 57-71 months. Although Courts have held that the "statutory maximum" for Apprendi purposes is the statute of conviction, (here § 1956(a)(1)),Blakely's definition of "statutory maximum" as the maximum sentence a judge may impose **solely on the basis of the facts reflected in the jury verdict or admitted by the defendant**," 124 S.Ct. at 2537.

Here the jury found Garcia-Torres guilty of money laundering whether it was to promote or conceal is irrelevant for the purposes of this argument. On the basis of this verdict alone, the maximum sentence under the Guidelines that the District judge could have imposed-without any further findings-would have been 71 months, given a base offense level of 23. USSG 2S1.1(a)(1)[3]. Instead the District Court imposed a 20 year sentence. The Court determined that the base offense level for count one, was 38. The Court then made a two-level adjustment for weapon possession, and arrived at a base offense level of 40. Cross-referencing to a criminal history category of III, the Court arrived at a sentencing range of 360-Life. The Court determined that within that range, a total punishment of life was appropriate "due to all the facts of the case".

Having fixed the total punishment at life for count one, the District Court felt obliged under § 5G1.2(d) to impose a 20 year sentence (the statutory maximum) for count two withstanding the fact that the specific offense characteristic only called at best an offense level of 26, and ran each 20 year sentence consecutive

[3] The PSR recommended no dollar value enhancement as the laundered funds did not exceed $100,000.

in order to achieve a final sentence that most closely approximated what the Court believed to be the total punishment. Each of the 20 year sentences far exceeded the maximum sentence that the District judge could have imposed simply on the basis of the jury's verdict.

Therefore, the Supreme Court's decision in <u>Blakely v. Washington</u> clearly shows that the District Court's definition of statutory maximum as that term was used in <u>Apprendi</u> in imposing consecutive 20 year sentences on count one and two was plain error.

### THE COURT'S IMPOSITION OF 20 YEAR SENTENCE ON COUNTS ONE AND TWO WAS PLAIN ERROR

The District Court's finding by a preponderance of the evidence, after weighing multiple levels of hearsay testimony, that the Petitioner distributed multi-kilograms of cocaine, and was involved in murders in connection with count one, and promoted and/or concealed laundered fund in connection with count two was plain error. First, deviation from a legal rule is error unless the ruled has been waived. <u>U.S. v. Olano</u>, 507 US 725, 732-33(1993). As discussed above, the determination of the Petitioner's base offense level (and two point upward enhancement for gun possession, count one, and three point upward enhancement for what Petitioner knew or believed about the laundered funds, count two) by the District judge employing a preponderance of the evidence standard was error under <u>Blakely</u>.

Second, in determining whether the error was plain, the Court has explained that it is sufficient for the error to be clear under the law as it exist at the time of appeal. <u>Johnson v. U.S.</u>, 520 US 461, 468(1997)("Where the law at the time of trial was settled and clearly contrary to the law at the time of the appeal, it is not enough that an error be plain at the time of the appellate consideration"). It is clear after <u>Blakely</u> that increasing the Petitioner's punishment based on

11

facts not admitted by him or determined by a jury beyond a reasonable doubt was clearly contrary to his Sixth Amendment jury right.

For an error to effect "substantial rights" the error must have been prjudicial; It must have effected the outcome of the District Court's proceedings. U.S. v. Olano, 507 US 725, 734(1993). Petitioner did raise specific objections concerning the drug amount,[4] 150 kilograms or more of cocaine, and the Court's consideration of the alleged murders. The Court however, never made **any** findings regarding the amount of laundered funds involved. All the evidence in this regard was based on various dgrees of hearsay testimony for turncoat co-conspirators which contributed to the Court's preponderance of the evidence findings which led to the Court's imposition of statutory maximum of each of the two counts. It cannot be seriously disputed that the lower standard of proof affected the outcome of the Court's ultimate sentence.

Finally, the errors affected the fairness of Petitioner's proceedings. In discussing the fairness of the result in Blakely, the Court stated:

> Any evaluation of Apprendi's "fairness" to criminal defendants must compare it with the regime it replaced, in which a defendant, with no warning in either his indictment or plea, would routinely see his maximum potential sentence balloon from as little as five years to as much as life imprisonment, See 21 USC § 841(b)(1)(A), (D), based not on facts proved to his peers beyond a reasonable doubt, but on facts extracted after trial from a report complied by a probation officer who the judge thinks more likely got it right than wrong. Blakely, 124 S.Ct. at 2542.

---

(4) The District concede the error of the general verdict and the lack of a speci-fic drug kind or amount found by the jury but held that it still retained the discretion to determine kind and amount.

This is precisely what happen to the Petitioner. Although, Petitioner was found guilty at trial to only a multi-object drug conspiracy with no drug kind or amount identified by the jury's verdict and money laundering with no dollar value of the proposed funds laundered, the sentencing Court adopted the PSR recommendations as more right than wrong and imposed a significantly higher sentence based on the District judge's preponderance of the evidence findings.

Therefore, this Court should find that the District judge's imposition of this sentence after determining the material sentencing facts by a preponderance of the evidence, rather than relying on a jury's determination of the facts beyond a reasonable doubt, violated Petitioner's Sixth Amendment rights as explained in Blakely.

ISSUE THREE

> WHETHER THE TRIAL COURT ERRED BY FAILING
> TO MAKE SPECIFIC FINDINGS AS TO THE AMOUNT
> OF DRUGS ATTRIBUTABLE TO PETITIONER
> WITHOUT MAKING SPECIFIC INDIVIDUALIZED
> FINDINGS AS TO DRUG AMOUNT TO PETITIONER

Petitioner states that the District Court erred in imposing a 20 year sentence as to count one of the superseding indictment, without first making specific findings that he, rather than the charged multi-drug conspiracy, was accountable for a particular quantity or kind of drug. U.S. v. Colon-Solis, 354 F.3d. 101 (1st Cir. 2004).

At sentencing, Petitioner specifically raised the issue of the appointment of the drugs attributable to him. (S.T. 12/19/01, pg. 19). However, the Court defiantly stated that it retained the discretion to find Petitioner accountable as to the nature and amount of controlled substances attributable to him. (Id. at 28-29). Despite the fact that the Court recognized the error in the jury instruction, in

13

failing to ask the jury to specifically identify the object of the drug conspiracy.
- Thus, because the jury did not specifically identify a drug object of the conspiracy,
the Court could not then make an individualized finding as to drug amount to Peti-
tioner. This Court in the past U.S. v. Bradley, 917 F.2d. 601, 604(1st Cir. 1990)
and now in the present U.S. v. Colon-Solis, 354 F.3d. 101(1st Cir. 2004) has held
the Court's lack of such finding offensive to the Petitioner's sentencing pro-
ceedings, to trigger a statutory maximum to a particular co-conspirator. Derman
v. U.S., 298 F.3d. 34, 43(1st Cir.) cert. denied 537 U.S. 1048(2002).

It is clear from the record that the District judge prescribed the drug amount
and kind from a conspiracy wide perspective to trigger the statutory maximum
pursuant to 21 USC § 841(b)(1)(C). However, that provision cannot be applied in
this case without an individualized finding that the triggering amount (of whatever)
was attributable to, or forseeable by him. Accordingly, this Court should find
as the First Circuit did in Colin-Solis and remand for resentencing.

## CERTIFICATE OF SERVICE

I, ANDRES GARCIA-TORRES, hereby certify that the statement of facts in the accompanying more are true and correct to the best of my knowledge and the statements made on information and belief are true to the best of my knowledge and belief 28 USC § 1746.

DATED:December 27, 2004

Respectfully Submitted

Andres Garcia Torres
Reg. #14959-069
FCI EDGEFIELD
P.O. Box 725
Edgefield, S.C. 29824